United States versus Reed. Okay, so Ms. Bennett, good morning. You have reserved two minutes for rebuttal. Good morning, Your Honors. Nice to see you. So you may proceed. Your Honors, may it please the Court, I'm Megan Bennett. I represent Defendant Appellant Jamari Reed in this issue, in this appeal. The issue here is a narrow one, whether the District Court erred in applying the attempted murder cross-reference in the context of the sentencing for the sole count here, which was the 922G felon in possession charge. In this case, unlike the other Second Circuit cases and other circuits and other District Court cases within the Second Circuit, there was no contested evidentiary challenge as to what was in the record to support the Court's decision to apply the guideline enhancement. There was a video, about 30 seconds long, that showed a single firearm discharge, and there was a concession that there had been an argument of some sort six minutes prior to that. And I think the question for this Court is, when the evidence, as here, is in equipoise, has the government met its burden to establish the specific intent to kill? Well, I'm not sure I understand why you say it's in equipoise. First of all, it's a preponderance standard, right? Yes. And our review is clear error, right? Well, I think that's a good question. Thank you, Judge Raji. This Court has said that— Clear error on the intent to kill. Well, I think if there were a contested question of fact, that might be the case. I think here— Well, there is a contested issue of fact on whether that was his intent. But the record—there's no contested challenge on the record evidence. And so— You're arguing that as a matter of law, that evidence could not permit a preponderance finding. I think that's what the case law in this circuit suggests, in fact, because in every other case in which there has been a firearm as sort of the hook for the purposes of the enhancement, there are additional indicia of intent. Well, but in none of those cases did we say that absent those facts, there could not be a finding. I mean, here, as you say, the facts are not in dispute. We have evidence that the defendant was seeking the victim after an argument. I don't think that's correct. Well, then we have disputed facts. I understood that it was—there was no dispute that he was firing at a close range. He missed, but he was firing at a close range. And that he then continued to pursue the victim with the gun drawn and pointed. Now, I'm hard-pressed to understand why a fact finder couldn't conclude that the person's intent in those circumstances was to kill the victim. So first of all, just to the initial point about Mr. Reed having pursued the victim, if you look at the video, which is the only evidence as to the sequence of events immediately prior to the discharge, I think you'll see that the victim actually appears on—both the victim and Mr. Reed appear on the pathway, public pathway in the housing project, around the same time. There is not—there is no documentation or video that Mr. Reed has pursued the victim. They meet in the bodega at 7.18 p.m., and then the surveillance video, which begins around 7.24 p.m., shows the two of them— he and Reed had an argument, after which Reed confronted him with a firearm and fired one shot at him. Which I think that description is consistent with the video, which is that they— How is the fact finder at fault for concluding that as a result of the argument, Reed sought out the victim, intending to shoot him? There's no evidence that Reed sought out the victim. They meet—they meet, if you look at the video— Coincidentally, in your view. Yeah, they're very close. So they— What evidence is there of that? Well, that's—so if there is no evidence of Mr. Reed having sought out the victim, then the government hasn't met its burden on that point. We don't have the burden to prove that Mr. Reed did not seek out his victim. There's no evidence that Mr. Reed sought out his victim. The video shows that six minutes after they meet in the bodega, which is nearby the projects, an area where I gather from— All reasonable— All reasonable inferences. All reasonable inferences. Right. But there's no— So he just happened to have a gun, happened to see—happened to encounter the victim after this argument. Well, so also the happened to have a gun, the government made the assertion that Mr. Reed had gone someplace to retrieve a weapon, but there's actually no record support of that, and the district court acknowledged that in the sentencing hearing. But in any event, he fires him—he fires at him at close range. Now, you know, he missed, but that's what he did, and then he continued to pursue. I don't understand how we can say that as a matter of law, no fact finder could have concluded that that was an intent to kill. So I don't want to belabor the matter of law piece, but my point in raising that is that it is not necessarily clear that it's a clear error standard, that you could approach this from a de novo review perspective. But if we're looking at this as clear error as opposed to as a matter of law, this could never constitute a finding of—or could never support a finding of specific intent to kill. Just looking at the evidence, all we have is, as you note, the video record of a discharge in whatever we want to call in close range—in close proximity. The two men are in close proximity. I think that actually has to raise the question, if he intended to kill the victim, why didn't he—what could possibly have happened if his intent was to kill the victim at that range when he watched the video? They are clearly within several feet of each other. So what are you suggesting? That the intent was to scare him? So certainly that's what Mr. Reed said in his sua sponte letter to the court, which the court never made any finding on the credibility of that statement. Mr. Reed wrote to the court an uncounseled letter in which he said that my intent was to scare. He said other inculpatory things. But that's not evidence in the record at this point, right? So we're really relying on what does the evidence present? There was no request for a fatico. The court asked the parties for a fatico. The government declined. The government has the burden here on specific intent. I don't believe that there was record evidence to support the intent finding when all you have is the video of a single discharge where the victim is not hit and where—though there is pursuit for about three seconds, Mr. Reed quickly thereafter turns a different direction and runs away. There's not a subsequent discharge. The only information about what preceded the shooting was the statement from the victim that there was an argument. And if you look at the other cases in the circuit, so Judge Cronin relied specifically on Rodriguez and Stroman. In Rodriguez, you had somebody who—that was an application of the first-degree murder, attempted first-degree murder cross-reference. You have an individual who stakes out a car, lays in wait until the car comes by, shoots four times into the vehicle as it's traveling by, and then Judge Nathan finds, you know, calmly and deliberately walks away. Right, but this doesn't have to be as strong as that. It just has to be, you know, propondent to the evidence, right? But Judge Cronin specifically relied both on Rodriguez and Stroman. And in Stroman, you also have a further indicia of intent where you have an individual who has a bulletproof vest at home, has a police scanner at home, has notes, a notebook regarding rival gang murders, who chases two men into a bodega, corners them, and shoots directly at them. So I do think if you find in this case that Mr. Reed had the specific intent based on this record, which is thin, it's only the video, unlike these other cases, including the out-of-circuit cases where there is a romantic dispute preceding the discharge or where there is a fight earlier in the evening and people return with a weapon and, you know, fire on a crowd. Here, all we have is a single firearm discharge toward the victim that doesn't make any contact. How is that, by a preponderance of the evidence, proof of the specific intent to kill as opposed to injure or to scare? Okay. Well, thank you. You reserve two minutes for rebuttal. Thank you, Ms. Bennett. We'll now hear from Mr. Klor. Am I pronouncing that right? Yes, Your Honor. Thank you. Good morning. May it please the Court. My name is Christopher Klor. I'm an assistant United States attorney here in the Southern District of New York. I represented the United States before the District Court, and I represent the United     Klor is guilty of murder. It is not clear error for a district court to infer from the facts of the case that Mr. Klor is guilty of murder. which a jury could have reasonably inferred, which is simply that someone intends the obvious and ordinary consequences of their actions. Accordingly, it was not clear error in this case for the district court to conclude, again, by a preponderance. Well, the ordinary consequences of the action here were not killing him. He wounded him, right? Or he missed. The victim was not hit. So the argument we've got is that because he missed, there should be some question as to whether there was an intent to kill. Right. And there's sort of two arguments here. The first is that because the defendant missed, he could not have had the intent to kill, right, which would essentially reward defendants who are a bad shot. Here, what we have are undisputed facts which establish that prior to the shooting, there was an argument between the defendant and the victim. And that the victim left, as did the defendant, the location of that argument. The defendant obtained a firearm, which, based on the video, was concealed until the moment that the defendant got within close range of the victim the second time. So to the extent there's been this argument about pursuit or pursuing the victim, the defendant did have to find the victim a second time in order to have this second confrontation. What significance to your argument is the fact of the prior argument? Or maybe to put it in better ways, if in fact we were limited to just the video, let's say hypothetically, we didn't have evidence of the prior argument, what's your view on sort of what could be inferred just from the video? If we were to just, that's a fair question. Using the video alone, what we see is the defendant approach the victim, get within close range of the victim, brandish a firearm, which on the video appears to be pointed in the direction of the victim's head, fire a single shot, which is confirmed by a muzzle flash that is also observable in the video. The victim then attempts to flee. The defendant then chases the victim with the gun pointed in the victim's direction, although the defendant does not fire a second shot. And so I think the point here is that the argument that's being made is that because the defendant fired a single shot, he could not have intended to kill the target of this shooting when it also would have been reasonable for the court to infer or a jury to. No, no, please. So your view, like if that was all we had in this case, I'm not saying that that is, that would be enough to establish for a finding by a preponderance of a specific intent to kill? Certainly, Your Honor, particularly the fact that the gun was concealed prior to the shooting, which allowed the defendant to get within close range of the target, and certainly the fact that the gun was pointed in the direction of the victim's head when the firearm was discharged. Is it clear that it's in the, that the gun was pointed at his head? I've looked at the video. It's hard to make things out of that. I don't know that it's, I wouldn't say it is entirely clear, but it would not be unreasonable to, it would not be unreasonable to conclude from the video that the gun was pointed in this general area, the upper body slash head of the victim. Certainly pointed in, with an attempt to hit the person towards whom the firearm was pointed. And that occurred, again, after the defendant got within close range of the individual he was attempting to shoot. And so the point I was going to make is that, you know, to the extent there's been an argument about the fact that only a single shot was fired, it would also be reasonable to conclude that the defendant only fired a single shot because it was, because he only believed that he needed to fire a single shot given the fact that he was so close to the person he was attempting to shoot. So there are a number of, I guess the point is there are a number of permissible and reasonable conclusions that the court could have made even based on that limited set of facts here. And one of those permissible conclusions was that the defendant did, in fact, intend to kill the person he was firing. So again, and I do want to just briefly go over those facts again here. Prior to the shooting, the defendant had an argument with the victim in a convenience store. This is not disputed. What's the source of that information? There is a video of the conversation between the victim and the defendant prior to the shooting in the bodega. You then see both of them leave the bodega. But I mean, there's no other evidence. The fact that you declined to Fatico is that there was nothing more to provide. That's correct, Your Honor. That's correct. But again, so there's no dispute that it was the argument. There is no dispute that there was a second confrontation. There is no dispute that the shooting occurred within close range. And there's no dispute that the defendant attempted to pursue the target of the shooting after he fired his single shot. What difference does that make, I guess? So if I shoot and then walk away, that would suggest that the intent was not to kill? Well, if the intent was not to kill, then missing the shot could have been the end of it, should have been the end of it. The point is that there would be no need to continue to pursue the target once you fired a single shot, assuming that you only intended to scare the person you're shooting at. At that point, the message had been sent. He'd fired a shot. The victim was running. There would be no need to continue the pursuit. In fact, to briefly touch upon the letter that the defendant submitted or just the general argument that the defendant had no intention of killing the person he shot at, there are other things that could have been done. The defendant could have shot from long range. The defendant could have pointed the gun in the air. Frankly, the defendant could have not fired a single shot at all but instead brandished the firearm within view of the victim to scare the victim. Well, we don't have to conclude that any of those scenarios preclude a finding of intent to kill. Correct. We just have to conclude that the totality of circumstances here would have allowed such a finding, right? Correct, and that's the government's point. We're not suggesting that there should be a bright line rule that any time an individual fires a single shot in the direction of another individual, that therefore there is specific intent to kill. Our point is based on specific- Or the converse. Or the converse, correct. When all the evidence is that he fires and misses, that that precludes a finding of intent to kill. Correct, correct. The government's position here is that the district court did not commit clear error when it determined that the defendant possessed the requisite specific intent to kill based on the facts here, which frankly are not in dispute. So unless the panel has any additional questions, the government would rest on our briefing unless you have any additional questions. Thank you. All right. Thank you very much, Mr. Klor. Ms. Bennett, you have two minutes for involvement. Thanks. I want to address a few points. First, I started off by talking about the evidence being in equipoise, and here we have a record where I think it's fair to say that you could just as easily reach a conclusion about aggravated assault, attempted aggravated assault, as an attempted murder. I'm not sure that's what we mean by equipoise. I mean, it just means there's a triable question about what the intent was. Well, then let me- It's a separate question whether the evidence is insufficient as a matter of law to admit the intent. So let me turn it a little bit then and talk about preponderance because this court has said specifically in the context of criminal cases and looking at the case law on preponderance standard in the civil context that in sentencing when the preponderance, it's a tiebreaker, which dictates that when the evidence on an issue is evenly balanced, the party with the burden of proof loses. So I bring up equipoise because here the evidence on intent is equally balanced between aggravated assault and intent to murder. That assumes we're going to accept your argument that it's equally balanced. I mean, the first thing is we have somebody who fires a gun at close range at an individual. That by itself might suggest an intent to kill. So then I think you're looking at are you establishing a rule as a matter of law that any time a person discharges a firearm in close range- No, we're not establishing any rule as a matter of law. We're saying that that might support a finding. It might be sufficient, but that's not all the evidence here. That's all the evidence. And to the point about the argument, Mr. Clore said that there is video of the argument. That's not accurate. There's video of the two men. There's surveillance photo from the bodega where they're actually seen shaking hands there. There's no evidence in the record that Mr. Reed went to get a weapon after that. There is a statement that there had been an argument. There's no context about what that argument was or when it was. And what's the source of that conclusion? Of which conclusion? That there was an argument. That's what the victim said when he was interviewed by the police. And that's not disputed? No, and we have to look at the evidence in the record, obviously, in the light most favorable to the government. So let's say that there was an argument, an unknown argument. We don't know how serious it was. We don't know when it was. There's no evidence that Mr. Reed then went to retrieve a weapon. In fact, at the time that they're seen in the bodega, they shake hands. There's nothing to indicate that they're in any kind of dispute. They meet. He discharges the weapon. I think if you were going to hold here that that is sufficient to find a specific intent to kill as opposed to specific intent to injure, what you will be saying is that the firearm discharge itself, necessarily as a matter of law, will always establish a specific intent to kill. Very quickly, I know that this court, Judge Sullivan, I'm sorry, I'm now this year's old, asked the significance of the chase of Mr. Reed sort of running after the victim briefly after the discharge. I'd point out that in a number of the cases in the circuit and the district courts, it is the sort of calm walking away from the scene that courts use to infer that the shooting was intended to kill, that a person was not acting in the heat of the moment. I think if you watch this video, you see that this is very clearly a heat of the moment exchange. One is sort of heat of the moment, and heat of the moment, you can intend to kill in the heat of the moment, or you can intend to scare in the heat of the moment. Right, so I would say that it's- I think the question I was asking, does the fact that you pursue, is that consistent with an intent to kill? Because if you missed, and you just intended to scare, what is gained by following, by pursuing? Right, although if you pursue- Is it scarier when you pursue? You pursue, but in the context of this case, the pursuit is less than three seconds. You can see it on the video. I'm sorry, I didn't hear you. The pursuit is less than three seconds. You can see in the video that he runs very quickly, and then they part ways. And I want to very quickly just discuss this language of permissible inferences, because the cases that the government cites on permissible inferences, all are in the context of disputed questions of fact. I understand that the intent question here, that this court is approaching that as a question of fact, but the cases that the government cites when discussing when a court can reach, or when a fact finder can, on a record, reach different permissible inferences, so long as whatever it reached was permissible given the record, this court shouldn't disturb that finding. Those cases, for example, the U.S. against Norman case, which I argued on appeal, had to do with loss amount and numbers of victims, and both of those were contested sort of mathematical questions, and this court found that the sentencing court's conclusion on that was reasonable given the long trial record in that case. The Cho case had to do with the number of victims in a prostitution ring, and there was a long record in that case as well. This is different. I think this falls into that category of when you have a record in which the evidence is equally consistent, and I understand this court may not agree with me that it's equally consistent with an attempted aggravated assault, but if it is equally consistent with attempted aggravated assault, then the tie has to go to the defendant because the government has not met its burden, even at the preponderance standard, and I will, just in closing, mention that this court has recognized that though a preponderance standard applies, when what we are talking about is punishing somebody for uncharged conduct at the level that approaches what they would be charged for that conduct had it been the subject of a conviction, that the preponderance standard has to be applied rigorously. Here we have a sentence that was essentially tripled because of the application of this guideline. If the evidence is equally consistent with attempted aggravated assault as it is with attempted murder, then the government had to have lost. All right. Well, thank you very much. We will reserve decision.